**C.B. TRUCKING, INC., Plaintiff,**

v.

**WASTE MANAGEMENT, INC. and WMX Technologies, Inc., Defendants.**

**Civil Action No. 94–12625–MEL.**

United States District Court,
D. Massachusetts.

Oct. 9, 1996.

---

Edward J. McCormick, III, McCormick & Maitland, Norfolk, MA, for Plaintiff.

James J. Dillon, J. Anthony Downs, Goodwin, Proctor & Hoar, Boston, MA, for Defendants.

LASKER, District Judge.

From 1990 through 1993, C.B. Trucking Inc. won the contract with the Towns of Franklin and Medway, Massachusetts to collect residential solid waste. In 1994, Waste Management of Massachusetts, Inc., on the basis of public bidding, displaced C.B. Trucking as low bidder on the contracts with Franklin and Medway. C.B. Trucking has brought this suit against Waste Management of Massachusetts, Inc. and WMX Technologies, Inc., (collectively Waste Management) alleging that Waste Management: has violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, by attempting to monopolize the residential solid waste business through the practice of predatory pricing; has violated the Robinson–Patman Act, 15 U.S.C. §§ 13 and 13a, by engaging in predatory pricing; has intentionally interfered with existing contracts between C.B. Trucking and the Towns of Franklin and Medway, in violation of Massachusetts law; and finally, has engaged in unfair and deceptive business practices, in violation of Mass.Gen.L. ch. 93A.

Waste Management has moved to dismiss the Complaint (in fact, the Second Amended Complaint) on the grounds: 1) that plaintiff's claims of predatory pricing and attempted monopolization are inherently implausible and fail to meet the heightened pleading requirements of *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); 2) that the predatory pricing claims are barred by the state action Noerr–Pennington doctrine because the alleged monopolization consists of public contracts with municipalities authorized by state law; 3) the plaintiff's state law claims are invalid as a matter of law but, in any event, upon dismissal of the federal claims, should be dismissed as pendent claims.

Although Waste Management's motion to dismiss was brought under the provisions of Rule 12(b)(6) of the Fed.R.Civ.P., the Court has solicited and received from both parties affidavits relating to plaintiff's claim that the prices upon which Waste Management won the bids from the Towns of Franklin and Medway were predatory, that is that they were set below Waste Management's actual costs. Accordingly, as to that issue, the motion is regarded as a motion for summary judgment.

The defendant's motion is granted and the Complaint is dismissed.

## I.

C.B. Trucking claims that the "final price submitted by Waste Management to secure the contract[s] was below its average cost to perform the contract, as well as that of its competitors,"[1] that "Waste Management has engaged in a practice of predatory pricing for

---

1. The Complaint alleges that in 1994 Waste Management submitted bids to the Towns of Norton and Medway that were substantially lower than the bids submitted by competitors:

Town of Norton
A. Laidlaw: $223,000
B. McCarthy: $188,000
C. B.F.I.: $209,000
D. C.B. Trucking: $243,000
E. Waste Management: $149,000

Town of Medway
A. B.F.I.: $228,000
B. Laidlaw: $220,000
C. C.B. Trucking: $178,000
D. Waste Management: $138,000

See Complaint ¶¶ 10, 12.

the collection of residential solid waste ... so as to unfairly restrain trade, do away with competition, and to create a monopoly in the residential trash business in eastern Massachusetts," and that as a result of Waste Management's actions, it has been forced to cease operations.

Waste Management responds that although its bids were lower than those submitted by its competitors, the mere existence of a low bid—even a bid substantially lower than that of other bidders—is insufficient to support a predatory pricing claim. It argues that C.B. Trucking has failed to establish the critical prerequisite of any predatory pricing claim: that the defendant's bid prices were actually lower than its costs. Waste Management contends further that even if C.B. Trucking's allegations are accepted as true, they do not include a necessary element of the offense, that is, that Waste Management will be able to recoup its investment in below-cost bidding.

## II.

■ To establish a predatory pricing claim, a plaintiff must prove that the "prices complained of are below an appropriate measure of its rival's costs," and that "the competitor had a reasonable prospect, or, under § 2 of the Sherman Act, a dangerous probability of recouping its investment in below-cost prices." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 222–24, 113 S.Ct. 2578, 2587–89, 125 L.Ed.2d 168 (1993).

In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* the Supreme Court commented that "a predatory pricing scheme is by nature speculative":

Any agreement to price below the competitive level requires the conspirators to forgo profits that free competition would offer them. The forgone profits may be considered an investment in the future. For the investment to be rational, the conspirators must have a reasonable expectation of recovering, in the form of later monopoly profits, more than the losses suffered.... [T]he success of such schemes is inherently uncertain: the short-run loss is definite, but the long-run gain depends on success-

fully neutralizing the competition.... Absent some assurance that the hoped-for monopoly will materialize, and that it can be sustained for a significant period of time, "[t]he predator must make a substantial investment with no assurance it will pay off."

475 U.S. 574, 588–89, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986) (citation omitted).

Thus, in considering the standard to be applied when deciding a summary judgment motion in an antitrust case, the *Matsushita* court held:

[i]t follows that ... if the factual context renders [plaintiff's] claim implausible—if the claim is one that simply makes no economic sense—[plaintiff] must come forward with more persuasive evidence to support [it's] claim than would otherwise be necessary.

*Id.* at 587, 106 S.Ct. at 1356.

In the spirit of *Matsushita,* the First Circuit observed in *Tri–State Rubbish, Inc. v. Waste Management, Inc.,* 998 F.2d 1073 (1993) that

"the requisites for proving predatory pricing are demanding because the conditions under which it is plausible are not common, and because it can easily be confused with merely low prices which benefit customers."

*Id.* at 1080.

■ In the case at hand, C.B. Trucking's "evidence" that Waste Management's bid prices were lower than those of its competitors is insufficient on its face because it does not establish that the bid prices were below Waste Management's costs. Moreover, where, as here, the contracts with the municipalities in question run only for a period of three years and are for fixed fees, it is difficult to conceive how, if Waste Management's bids were below its costs, it could recoup its investment, nor has the plaintiff has submitted any evidence that recoupment would be possible.

In support of its motion, Waste Management has submitted the affidavit of Rory J. Fallon, the officer responsible for preparing, submitting and overseeing the preparation

and submission of the municipal bids at issue. Fallon's affidavit asserts unequivocally that Waste Management's bid prices were not below its costs and explains that Waste Management was able to bid as low as it did because it did not need to make any capital expenditures to perform the Franklin, Medway and Norton contracts.

In response, C.B. Trucking has filed the affidavit of Francis M. Cassidy, President of C.B. Trucking, in which he states that, premised on his own calculations and C.B. Trucking's actual experience providing trash hauling services in Franklin and Medway, it is his opinion that the bid prices submitted by Waste Management "were well below the cost to perform the contract[s]."

Fallon's affidavit, based as it is on personal knowledge, lowers the boom on C.B. Trucking's case. It constitutes a flat denial that Waste Management's prices were below its costs, and it explains the circumstances which permitted Waste Management to bid as low as it did and, nevertheless, make a profit. Cassidy's statements, on the other hand, consist solely of his own opinion or inadmissible hearsay and are not competent to create a factual dispute within the meaning of the Federal Rule of Civil Procedure 56. Moreover, even if Cassidy's statements were accepted as true, they would not constitute the requisite "persuasive evidence" required by *Matsushita* to defeat a motion for summary judgment by a defendant in a case alleging predatory pricing.

Moreover, assuming arguendo (in direct contradiction of Fallon's sworn statement) that Waste Management's bid prices were set below its own costs, it is nevertheless economically implausible to conclude that Waste Management had a "dangerous probability" of recouping its investment in below-cost prices when its contracts with Franklin, Medway and Norton were subject to public bidding; limited in duration to three years;[2] and set a fixed price for the services rendered.

In sum, both because C.B. Trucking's claims of predatory pricing do not meet the heightened pleading requirements of *Matsushita*, and because, on the evidence of record, Waste Management has established that its bids were not in fact below its costs, Waste Management is entitled to summary judgment dismissing the predatory pricing claims.

### III.

■ C.B. Trucking's causes of action against Waste Management for attempted monopolization, in violation of 15 U.S.C. §§ 1 and 2, are also dismissed, pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim, because the action complained of is protected under the so-called Noerr–Pennington and state action doctrines.

These claims are a mirror image of those found in *Bonollo Rubbish Removal, Inc. v. Town of Franklin*, 886 F.Supp. 955 (D.Mass. 1995), a case brought by the same plaintiff's counsel against various parties, including Waste Management. As in *Bonollo*, the case is governed by the decisions in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *Tri–State Rubbish v. Waste Management, Inc.*, 998 F.2d 1073 (1st Cir.1993), which cumulatively hold that activities of the state or its subdivisions (when authorized by the state) are not subject to the anti-trust laws nor is the activity of a private party dealing with the state in contractual matters, such as Waste Management in the case at hand. As in *Bonollo*, the Towns of Franklin, Medway and Norton were authorized under Mass.Gen.L. ch. 111, §§ 31A and 31B to enact ordinances and grant permits with re-

---

**2.** The Franklin and Medway contracts are limited in duration to three years. The Norton contract is also for three years, but provides the Town with a discretionary option of extending Waste Management's contract for an additional two years. *See* Ex. C to Jennings Aff.

spect to the collection and disposal of solid waste, and their actions in entering into waste disposal contracts were a clear and foreseeable result of a statutory scheme. For an extensive treatment of the subject, *see Bonollo,* 886 F.Supp. at 962–965.

## IV.

In view of the dismissal of the federal claims, the remaining counts of the Complaint (Counts IV, V, X and XI), all based exclusively on state law, are dismissed.

The Complaint is dismissed.

It is so ordered.